(C. D. 2017)

A. HIRSCHBERG
JAMES LOUDON & Co., INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 15, 1958)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by George R. Tuttle, E. Thomas Honey, and *Joseph Schwartz* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Dorothy C. Bennett, Samuel D. Spector, Joseph E. Weil*, and *William J. Vitale*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The subject of this protest is a thoroughbred stallion named "Loyola," imported from Mexico on December 22, 1947. Duty was assessed by the collector under paragraph 714 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, at 17½ per centum ad valorem, as a horse valued at more than $150. It is claimed that the horse is entitled to free entry under paragraph 1606 of said tariff act as an animal imported by a citizen of the United States specially for breeding purposes.

The entry was liquidated on April 27, 1950, and three protests were filed thereafter. Hearings were held on October 2 and 3, 1950, after which this protest was suspended under one of the other protests. The issues raised by the latter were finally decided in *United States* v. *A. Hirschberg*, 42 C. C. P. A. (Customs) 61, C. A. D. 571, rehearing denied September 15, 1954. Thereafter, additional hearings were held in this case on February 20, May 8, and October 17, 1956, and September 17 and 23, 1957. Briefs were filed by the parties on March 24 and May 12, 1958, respectively.

Three witnesses were called to testify in this case: John C. Townsend, the deputy collector at Los Angeles; Harold Vosburgh, who had been a racing official and registrar of the Jockey Club of New York in 1948; and Abraham Hirschberg, the importer and a plaintiff herein. In addition, a number of documents were received in evidence.

It appears from an agreement (defendant's collective exhibit A) between the importer and Joe Hernandez, agent and attorney for Miguel Muzquiz of Mexico, D. F., the owner of the horse, that the latter was "willing to ship said horse to California for the purpose of having said horse prove itself on California race tracks"; that Hirschberg was to pay the cost of transportation and maintenance of the horse; and that he was granted an exclusive option to purchase for $65,000 at any time on or before September 1, 1948. Hirschberg testified, at the trial, that he had raced horses and had sold a lot of them for breeding purposes. He said the value of a horse cannot be determined, unless it can run; otherwise, it is no good for

breeding purposes. He stated that, when he imported the horse involved herein, he agreed to race it to prove its worth and to purchase it if it acquired a good reputation and met with his approval. He said that his purpose in importing it was to sell it for breeding purposes, but he never, in fact, purchased it and never used it for stud purposes, because it could not race and was worthless.

At the time of entry, Hirschberg filed a declaration stating that he was a citizen of the United States and that he was importing the horse specially for breeding purposes. A special permit for release of the animal was granted and a bond was given for the production of the consular invoice and a certificate of pure breeding.

Hirschberg applied to the Department of Agriculture for a certificate of pure breeding and furnished a copy of Argentine Stud Book Certificate No. 737/46 for the horse "Loyola." The application was denied, because a record of complete official transfer of ownership from the breeder to the importer did not accompany the animal, as required by the regulations. C. L. Gooding of the Inspection and Quarantine Division explained, in a letter dated February 11, 1948 (plaintiffs' exhibit 5):

We observe from the photostatic copy of the Argentina pedigree certificate that Luis Muzqui is given as the owner prior to the exportation of the animal to Mexico. It further appears that the imported stallion was transferred on the reverse side of the Argentina pedigree certificate on March 24, 1947, to Miguel Muzquiz in Mexico City, the transfer presumably initialed by Mr. Manuel Tain, an official of the Argentina Jockey Club. No other official transfer appears in the Argentina certificate.

We wish to emphasize that in accordance with our governing regulations, transfers to United States importers must be made in the pedigree certificates by the associations issuing such certificates. It is further required that such transfers in these papers to United States importers must be approved by an authorized official of the registry association, such approval being evidenced by the signature of the official together with the date that the transfer was made. Such being the case, a bill of sale is not acceptable in lieu of an official transfer from the registry association.

According to Deputy Collector Townsend, the principal reason for the assessment of duty by the collector was the failure to produce the certificate of pure breeding, but there were other reasons that might have caused him to deny free entry.

Paragraph 1606 of the Tariff Act of 1930 provides:

PAR. 1606. (a) Any animal imported by a citizen of the United States specially for breeding purposes, shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes, except black or silver foxes: *Provided*, That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed: *Provided further*, That the certificate of such record and pedigree of such animal shall be produced and submitted to the Department of Agriculture, duly authenticated by the proper custodian of such book of record,

together with an affidavit of the owner, agent, or importer that the animal imported is the identical animal described in said certificate of record and pedigree. The Secretary of Agriculture may prescribe such regulations as may be required for determining the purity of breeding and the identity of such animal: *And provided further,* That the collectors of customs shall require a certificate from the Department of Agriculture stating that such animal is pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed.

(b) The Secretary of the Treasury may prescribe such additional regulations as may be required for the strict enforcement of this provision.

Pursuant to this section, the Secretary of Agriculture issued regulations providing (9 Code of Federal Regulations, Cum. Supp.):

§ 151.2 *Requirements for issuance of certificates of pure breeding*— * * *

\* \* \* \* \* \* \*

(c) *Transfer of ownership.* Complete transfer of ownership from the breeder to the importer shall be furnished, such transfer to be recorded on the pedigree certificates, or on official certificates of transfer of the registry association.

Plaintiffs claim that this regulation is unreasonable and invalid, in that it attempts to limit the scope of the exemption provided for in the tariff act by requiring that the importer be the actual owner of the animal, and claims, therefore, that the refusal of the Secretary of Agriculture to furnish the certificate of pure breeding does not preclude free entry under paragraph 1606 (a).

Said paragraph does not permit free entry of all. animals brought in for breeding purposes, but grants the privilege to pure-bred animals imported by a citizen of the United States specially for breeding purposes, whether intended to be used by the importer himself or for sale for such purposes, provided certain documents are produced and the regulations complied with.

Under a predecessor to this paragraph, it has been held that a mere dummy, who had no title to the animals or control over their disposition and who did not intend to use them or sell them for breeding purposes, was not entitled to the exemption. *C. S. Emery & Co.* v. *United States,* 20 C. C. P. A. (Customs) 340, T. D. 46113. In that case, cattle were imported by or consigned to William T. Wylie, a citizen of the United States in the employ of one Gale, a Canadian. Gale had owned the cattle and had sold them to another Canadian residing in the United States. The court stated (p. 343):

* * * It clearly was never intended by Congress that mere dummies, such as Wylie was, might be used by an owner of cattle to secure the privilege of exemption of duty. The paragraph reads: "whether intended to be used by the importer himself or for sale for such purposes." In the case at bar Wylie did not intend either to use the cattle or sell them for breeding purposes; at most, he was the mere agent of the real owner, who was a citizen of Canada. * * *

The real importer of the cattle in question was a Canadian citizen, and we hold that the use of his hired man as a dummy does not entitle him to free admission of the cattle in question.

Subsequent cases have held that it is not necessary for the importer to have complete ownership of the animals; that conditional ownership or ownership based on consignment is sufficient. *E. Dillingham, Inc.* v. *United States*, 27 Cust. Ct. 109, C. D. 1356; *Carey & Skinner, Inc.* v. *United States*, 33 Cust. Ct. 48, C. D. 1634, appeal dismissed December 10, 1954; *Carey & Skinner, Inc.* v. *United States*, 36 Cust. Ct. 84, C. D. 1756. In each of those cases, certificates of pure breeding had been obtained from the Department of Agriculture. Moreover, in the first *Carey & Skinner* case, the court pointed out that the importer was the owner of record and had sufficient title to consign the horses for sale and to transfer unconditional title to the purchasers. It said (p. 58):

\* \* \* An importer who is an American citizen, having the lawful possession of imported animals imported for breeding purposes, as evidenced by a complete record of transfers of ownership from the breeder to himself, which shall have been recorded on the pedigree certificates, approved by the registry association, may rightfully claim exemptions from duty under the provisions of paragraph 1606 (a) when imported for the purposes there set out.

In the instant case, the importer is an American citizen having lawful possession of the animal under an option agreement. He did not have title to the horse, but had a right to accept or reject the offer to sell within the time stated. He had a duty to care for the horse and a right to train and prove it at the California racetracks. Any earnings of the horse during the period of the option were to be applied first to the importer's expenses, but any balance remaining was to be the property of the owner or his agent.

While Hirschberg said that he imported the horse to sell for breeding purposes, he also testified that he agreed to purchase it and use it for stud purposes only if it withstood certain tests. It is clear that, whatever his ultimate intention as to the use of the horse if it met with his approval and he exercised the option to purchase, at the time of importation, he intended to give it a trial to determine its qualities. According to the agreement it was delivered to him only for the purpose of training and proving it. He had no right to use it himself for breeding purposes and, having no title, could not have sold it at all.

Therefore, the importation does not fall within the provisions of paragraph 1606 (a), *supra*, and the horse is not entitled to free entry thereunder. Consequently, it is unnecessary to consider the effect of the regulation questioned.

The protest is overruled and judgment will be rendered for the defendant.