AIR EXPRESS INTERNATIONAL AGENCY, INC. v. UNITED STATES

(No. 5176)*

United States Court of Customs and Patent Appeals, January 13, 1966

*James G. McGoldrick* for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Shelia N. Ziff* for the United States.

[Oral argument November 1, 1965 by Mr. Goldrick and Mrs. Ziff]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

ALMOND, Judge, delivered the opinion of the court:

This is an appeal from the decision and judgment of the United States Customs Court, Third Division,[1] sustaining the collector's classification of a male thoroughbred horse, imported into this country for breeding purposes, under paragraph 714 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, and assessment of duty thereunder at the rate of 8¾ per centum ad valorem.

---

*C.A.D. 869

[1] 52 Customs Ct. 119, C.D. 2447.

Appellant contends that the horse is entitled to duty-free entry under paragraph 1606(a) of said Tariff Act, as amended. That paragraph provides in material part:

Par. 1606. (a) Any animal imported by a citizen of the United States specially for breeding purposes, shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes * * *: *Provided,* That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed: *Provided further,* That the certificate of such record and pedigree of such animal shall be produced and submitted to the Department of Agriculture, duly authenticated by the proper custodian of such book of record, together with an affidavit of the owner, agent, or importer that the animal imported is the identical animal described in said certificate of record and pedigree. * * *

The parties stipulated below that:

(1) Mrs. M. E. PERSON, also known as Mrs. LIZ WHITNEY PERSON, named on the Customs Entry is a citizen of the United States and resides at Llangollen Farm, Upperville, Virginia.

(2) SR. JOSE FCO. MARIATEGUI, named on the bill of lading is a non-citizen and non-resident of the United States.

(3) The issue is whether or not a pure-bred animal otherwise qualified for duty-free entry under Paragraph 1606, Tariff Act of 1930, as amended, may be entered duty-free under the aforesaid tariff provision by a United States resident-citizen who is a co-owner where the other co-owner is a non-citizen, non-resident of the United States.

The protest was submitted on the above stipulation, and on the invoice, entry, and other official papers relating to the entry and appraisement of the animal covered by the protest.

The record is clear that the horse was imported for breeding purposes; that it was pure bred and as such duly recognized and registered. The provisions of the statute pertaining to the duties of the Department of Agriculture were complied with.

The court below found that the horse was originally owned by a Peruvian citizen, not here involved, and by him sold to Mr. Mariategui and Mrs. Person, who, at the time of importation, were co-owners; that Mr. Mariategui, a Peruvian, was then Peruvian Ambassador to the Republic of Panama and that Mrs. Person, a citizen of the United States, resided at Llangollen Farm, Upperville, Virginia.

The horse was shipped from Panama to Miami via Pan American Airways with bill of lading showing Mr. Mariategui both as shipper and consignee. The waybill, however, bore thereon the following statement:

The undersigned carrier, to whom or upon whose order the articles described herein or in the attached document must be released, hereby certifies that

is the owner or consignee of such articles within the purview of section 484(h), Tariff Act of 1930. In accordance with the provisions of section 484(j), Tariff Act of 1930, authority is hereby given to release the articles covered by the aforementioned statement to such consignee.

Air Express entered the horse at Miami for the account of Mrs. Person; the declaration of the "nominal consignee or agent" was that Mrs. Person was the actual owner for customs purposes; the declaration to accompany animals offered for importation, signed by J. Mariategui as "agent," stated that the horse, offered for importation by Mrs. Person and imported for breeding, was to be delivered to her Virginia farm; the declaration on free entry of animals for breeding purposes was signed by M. E. Person, and stated:

> I, Mrs. M. E. Person, declare that I am a citizen of the United States; that the animals covered by the annexed entry are imported by me specially for breeding purposes; and that the same are identical with those described in the certificate of pedigree presented therefor.

The Department of Agriculture issued the certificate of pure breeding nearly three years after entry. The importer was named therein as Mrs. Liz Whitney Person and Jose Fco. Mariategui. In an accompanying letter to the Miami collector it was stated that the certificate was issued by the Department with knowledge that the horse was jointly owned by a United States citizen and a noncitizen.

The court below cited the cases of *C. S. Emery & Co.* v. *United States*, 20 CCPA 340, T.D. 46113; *E. Dillingham, Inc.* v. *United States*, 27 Cust. Ct. 109, C.D. 1356; *Carey & Skinner, Inc.* v. *United States*, 33 Cust. Ct. 48, C.D. 1634; and *Carey & Skinner, Inc.* v. *United States*, 36 Cust. Ct. 84, C.D. 1756, projecting the following rationale for its decision and judgment:

> Even if it be assumed that plaintiff, a citizen, coowner with an alien, alone imported the horse * * * (and we are not convinced the record shows this), the question is whether she is such an importer as paragraph 1606 contemplates. Is she, a citizen of the United States, one who, granted the privilege of free entry for breeding purposes, could use the horse or sell it, as she might determine, for breeding purposes? It is far from clear from the record before us that Mrs. Person was in position to sell the horse or otherwise make legally effective determinations with regard to it.
>
> In our view, it is this language of paragraph 1606 which spells out congressional intention to grant free entry to such an importer as could, legally, either use the horse or sell it for breeding purposes. At most, plaintiff evidently could sell only a one-half interest in the horse. Whether she had such title as permitted her alone to determine its use, does not appear.

The court concluded that inasmuch as the record disclosed no such title as would vest Mrs. Person with authority to determine disposition

of the horse, she is not such an importer as paragraph 1606(a) contemplates.

For reasons hereinafter appearing, we are unable to agree that paragraph 1606(a) is susceptible to the construction placed thereon by the court below.

Where legislative intent is manifest from the plain meaning of the language employed, there is neither occasion nor justification for resort to the well recognized rules of statutory construction as aids in the ascertainment of legislative intent. We must first look within the four corners of the statute under consideration to determine its applicability to the factual situation presented as well as the purpose it was designed to serve.

The record clearly supports the conclusion that the importer is a citizen as contemplated by the statute; that the horse in question meets all of the requirements of the statute relative to its qualification for breeding purposes; that it was imported specially for such purposes and that the citizen importer intended to so use it. Neither expressly nor by implication does the record support a conclusion of fraud or collusion to abort the duty-free privilege conferred by the statute or to subvert manifest legislative purpose and intendment relative to the importation and utilization of pure bred breeding stock.

It was within the province of Congress in conferring the duty-free privilege upon a citizen to limit the privilege "to such an importer as could, legally, either use the horse or sell it for breeding purposes," within the context of the decision below. Congress did not see fit to impose the requirement found by the court below to be necessary in order for the importing citizen to qualify for the duty-free privilege afforded by the statute. We cannot read into the statute that which is not there. *Sandoz Chemical Works, Inc.* v. *United States*, 50 CCPA 31, C.A.D. 815.

As noted above, the record discloses that the importer intends to use the horse for breeding purposes and that it was imported for that purpose. Possession, control and custody for such purposes would, in our view, carry with it the right of use for such purposes. No further muniment of title is required by the statute. The statute reads in the disjunctive, "use" or "sale" for breeding purposes. Congress has not imposed a requirement that the importer be in a position to both use and sell.

Viewing the statute (1606(a)) in its entirety, it is noted that the certificate of "record and pedigree" required to be submitted to the Department of Agriculture must be accompanied by an "affidavit of the *owner, agent, or importer*" [emphasis supplied] that the imported animal is identical to the one described in the certificate. In this

connection we find persuasively appropriate the view expressed in the dissenting opinion rendered in *C.S. Emery & Co.* v. *United States:*

I can not conceive that it is the duty of the collector of customs to ascertain actual ownership. The collector is concerned only with the proper enforcement of the customs laws and not with questions of title. For all the purposes in which he has an official interest, the statute declares who the owner is. * * *

\* \* \* \* \* \* \*

By using the words "owner, agent, or importer." * * * Congress seems to me to have clearly indicated that the importer need not necessarily be the actual owner.

We have reviewed the cases cited in the opinion below and those relied on by the appellee. In the *C.S. Emery* case, the importer of record was found to be a mere dummy and consignee of the owner who was not a citizen of the United States. That situation is not here presented.

In the *Dillingham* case the issue presented involved a reliquidation on the ground of fraud. The two *Carry & Skinner* cases likewise involved reliquidations on the ground of fraud. We are not confronted with such an issue here.

We think these cases are each readily distinguishable on a factual basis from the instant case.

Appellee cites *A. Hirschberg, James Loudon & Co., Inc.* v. *United States*, 41 Cust. Ct. 33, C.D. 2017. Clearly this case is inapposite to the situation here presented as is manifest from the following excerpt from the court's opinion:

While Hirschberg said that he imported the horse to sell for breeding purposes, he also testified that he agreed to purchase it and use it for stud purposes *only if it withstood certain tests.* It is clear that, whatever his ultimate intention as to the use of the horse if it met with his approval and he exercised the option to purchase, *at the time of importation,* he intended to give it a trial to determine its qualities. According to the agreement *it was delivered to him only for the purpose of training and proving it.* He had no right to use it himself for breeding purposes and, having no title, could not have sold it at all. [Emphasis supplied.]

The horse was imported under an agreement to race it to prove its worth and to purchase if it acquired a good race track reputation. Manifestly, the importation in *Hirschberg* did not comply with the requirements as to use by the importer or sale for breeding purposes.

For the reasons stated, we are unable to agree with the Customs Court that Mrs. Person is not such an importer as is contemplated by paragraph 1606(a). We, therefore, *reverse* the judgment of the Customs Court.

———

SMITH, Judge, concurring in part.

The parties to this appeal offered a stipulation to the United States Customs Court below, stating the issue to be decided as follows:

(3) The issue is whether or not a pure-bred animal otherwise qualified for duty-free entry under Paragraph 1606, Tariff Act of 1930, as amended, may be entered duty-free under the aforesaid tariff provision by a United States resident-citizen who is a co-owner where the other co-owner is a non-citizen, non-resident of the United States.

The above stipulation was entered, "subject to the approval of the Court." The trial court, in its decision, rephrased the issue as follows:

*The issue here litigated* is whether the male thoroughbred horse "Bob," imported into the United States for breeding purposes, is entitled to duty free entry under paragraph 1606(a), Tariff Act of 1930, as amended. [Emphasis added.]

The appellant [2] at the onset argues that the trial court erred in not confining its decision to the issue as stipulated by the parties. The stipulated issue was subject to the court's approval. The record does not show that the trial court gave its approval. I therefore believe that the trial court did not err in rephrasing the issue so as to state what it felt was actually *litigated*.

At the onset of its opinion, the trial court understandably experienced great difficulty in deciding who imported the animal in question. The documents referred to in the record state the following relationships:

| TITLE OF DOCUMENT | OFFICE IDENTIFIED | PERSON IDENTIFIED |
|---|---|---|
| 1. Bill of Lading | Shipper and Consignee | Mr. Mariategui |
| 2. Waybill | Carrier | Pan-American World Airways, Inc. |
| | Owner or Consignee | Air Express Int'l. Agency, Inc. |
| 3. Entry at Miami (Document not identified further) | Nominal Consignee or Agent | Air Express Int'l. Agency, Inc. |
| | Actual owner for customs purposes | Mrs. Liz Whitney Person |
| 4. Declaration accompanying animals offered for importation | Agent | J. Mariategui |
| | Offeror for importation | Liz Whitney Person |
| 5. Declaration on free Entry of Animals for Breeding Purposes | U.S. Citizen | Mrs. M. E. Person |
| 6. Certificate of Pure Breeding | Importer | Mrs. Liz Whitney Person and Jose F. Mariategui |
| 7. Letter from Department of Agriculture to Miami Customs Collector | Joint Owners | U.S. Citizen and a non-citizen. |

[2] Throughout the proceedings the parties have considered Mrs. LIZ WHITNEY PERSON the real party in interest and AIR EXPRESS INTERNATIONAL AGENCY, INC., acting for account of MRS. PERSON, as nominal plaintiff only.

The trial court, after reviewing the above documents, stated:

Even if it be *assumed* that plaintiff, a citizen, coowner with an alien, alone imported the horse "Bob" (and we are not convinced the record shows this), *the question is whether she is such an importer as paragraph 1606 contemplates.* * * * [Emphasis added.]

Paragraph 1606 (a), cited by the court, provides for the duty free entry of certain animals under certain conditions:

(1) The animal must be a pure bred;
(2) The importer must be a United States citizen;
(3) The animal must be imported specially for breeding purposes;
This condition is satisfied either when the importer intends to use the animal himself specially for breeding or where the importer intends to sell the animal for such purposes;
(4) Certain certificates and affidavits must be executed in the manner set forth in the statute.

The trial court in its decision *assumed* that condition (2) had been met. I believe this was error. To qualify for the duty free entry of animals it must be decided that a United States citizen did *in fact* import the animal. If from the evidence before it, the trial court determines that a citizen did not in fact import the animal (and the court below in this case was not convinced that the evidence showed this) the inquiry is at an end.

The trial court, after assuming that a citizen imported the animal, proceeded to decide whether that citizen "could, legally, either use the horse or sell it for breeding purposes," viz, was condition (3) satisfied? The trial court found that:

* * * At most, plaintiff evidently could sell only a one-half interest in the horse. Whether she had such title as permitted her alone to determine its use, does not appear.

The trial court concluded that the plaintiff had "no such title as permits her to determine *disposition* of the horse 'Bob.' She is not such an importer as paragraph 1606 (a) contemplates."

I think the trial court, in determining whether condition (3) was satisfied, erred in basing its determination on "title" or "ownership" of the horse.

The trial court, in basing its decision on the fact that plaintiff had not shown 100 per cent ownership in the horse, relied on our decision in *C.S. Emery & Co.* v. *United States*, 20 CCPA 340 and cases subsequent. Both parties to this appeal cite the *Emery* decision as being in their favor. These opposite constructions of *Emery* should be resolved.

In *C. S. Emery*, a citizen of Canada sold certain pure-bred cattle to a second citizen of Canada living in New Hampshire, title to pass upon the delivery of the cattle to the Canadian citizen living in New Hampshire. The Canadian seller had in his employment one Wylie, a citizen

of the United States. To effectuate the sale, a shipper's invoice was prepared naming Wylie as the shipper from a town in Canada and also naming him as the consignee at a town in the United States. For pedigree purposes the animals were transferred on the Canadian Breeding Association records from the name of the Canadian owner to Wylie's name. Wylie accompanied the shipment and engaged a licensed custom house broker to make entry and clearance in the United States for his account as the consignee. Duty was collected and protested.

Before the Customs Court the Government claimed and the court found, *two* reasons for finding that the Government was correct and entitled to judgment. The court stated:

* * * [1] In the case at bar there was no intent, in good faith, to import the cattle into the United States for the importer's own use or for sale by him to others for that *purpose*, as specified in paragraph 1506. * * * [2] The language in paragraph 1506, "whether intended to be used by the importer himself or for sale for such purposes", implies that the importer of the animals shall be the actual owner thereof. * * *

On appeal this court affirmed the trial court stating:

Appellant contends that the object of the provision of paragraph 1506 is to improve the breed of domestic animals. That unquestionably is its principal object, but in furthering such object the privilege of free importation is limited to citizens of the United States. It clearly was never intended by Congress that mere dummies, such as Wylie was, might be used by an owner of cattle to secure the privilege of exemption of duty. The paragraph reads: "whether intended to be used by the importer himself or for sale for such purposes." *In the case at bar Wylie did not intend either to use the cattle or sell them for breeding purposes; at most, he was the mere agent of the real owner, who was a citizen of Canada.* To admit appellant's contention would practically defeat the intention of Congress in granting exemption from duty under said paragraph 1506 to citizens of the United States. We are of the opinion that Congress intended to encourage the improvement of the breed of domestic animals but in furthering such purpose intended to give to citizens of the United States an advantage over one who was not such citizen.

*The real importer of the cattle in question was a Canadian citizen, and we hold that the use of his hired man as a dummy does not entitle him to free admission of the cattle in question.* [Id. at 342–343] [Emphasis added.]

In *Emery*, neither conditions (2) or (3) were met. Neither agent Wylie or his principal in Canada were importing "specially for breeding purposes;" nor was the true importer, the principal in Canada, a United States citizen; nor was the true buyer, residing in New Hampshire, a United States citizen. Further, this court did not affirm the second reason set forth by the trial court, *viz*, that the importer must be a citizen *and* the actual owner of the cattle.[3] The *Emery* decision

---

[3] Decisions subsequent to Emery are in no way inconsistent.

permitted the Government to show that the alleged importer (Wylie) did not in fact import the cattle "specially for breeding purposes" not withstanding that the alleged importer was a United States citizen who "arranged" the importation and who had "title" to the cattle on the Canadian Breeding Association records.

While there exists conflicting evidence in the record as to whether Mrs. M. E. Person did in fact import the animal, there is no evidence *contrary* to Mrs. Person's statement, in the Declaration on Free Entry of Animals, "that the animals [sic] covered by the annexed entry are imported by me specially for breeding purposes * * * " and that the animal was delivered to Mrs. Person's farm. I do not regard evidence of *title* as being relevant to the inquiry as to whether the animal is being imported *specially for breeding purposes*.

As stated in *Emery*, one object of the statute is to improve the breed of domestic animals. This objective would be lost to a citizen who wished to import foreign animals to use or sell for use in breeding to improve domestic stock but who did not wish to buy the animals. Also in *Emery* we held that the statute gave a *privilege* to a *citizen* and an advantage over one who was not a citizen. On the basis of the clear wording of the statute this privilege is not reserved only for complete owners of animals and denied to those citizens who are but part owners or non-owners.

I would therefore find the stipulation and the evidence of record show that conditions (1), (3) and (4) have been met. Since I find no determination by the trial court as to whether condition (2) was satisfied, I would *remand* the case for a determination of this issue.